PEOPLE, PLAINTIFF AND APPELLEE, *v.* VILÁ, DEFENDANT AND
APPELLANT.

APPEAL from the District Court of San Juan, Section 2, in
a Prosecution for Adulteration of Milk.

No. 1056.—Decided July 21, 1916.

ADULTERATION OF MILK—SALE OF MILK FOR INDUSTRIAL PURPOSES.—An informa-
tion is sufficient when it charges the defendant with having sold milk diluted
with water in a milk-stand belonging to him, for that means that he sold
the milk to all comers and not for industrial purposes; and when this is
not the case, it is incumbent upon the defendant to prove it in his defense.

ID.—EXPERT KNOWLEDGE—PRESERVATIVES—LAWFUL STANDARD.—When it is not
shown that a special knowledge is required of a person using preservatives
for the purpose of conserving milk seized until it is analyzed by the chemist
and it is shown that the preservatives in no way change the condition of
the milk, it cannot be held that the use of the preservatives added to it
the water found in excess of the lawful standard.

ID.—LAWFUL STANDARD.—An excess of water over the lawful standard, whether
small or great, is sufficient to warrant the finding that the milk did not
meet the fixed standard of purity.

The facts are stated in the opinion.

*Messrs. Texidor* and *Martínez Alvarez* for the appellant.

*Mr. Salvador Mestre, fiscal,* for the appellee.

MR. JUSTICE ALDREY delivered the opinion of the court.

This is an appeal by José Vilá from a judgment convict-
ing him of selling milk diluted with water as pure milk.

The evidence shows that the milk was seized on Decem-
ber 28, last, and analyzed on January 4, following, it having
been kept in the meantime by means of preservatives added
to it by a health inspector, which preservatives, according
to the testimony of a chemical expert, did not change the
condition of the milk in any way. The analysis of the milk
gave the following results: Specific gravity, 1.032; fat, 3.40
per cent; reading of refractometer, 35; total solids, 11.24;
solids without fat, 7.84 per cent; water, 88.76 per cent. The
chemical expert testified that 11.24 is below the standard of
solids, which is 12; that the cows of Porto Rico feeding in
bad pastures produce milk testing 36.05 by the refractometer,

and that milk showing 35 by the refractometer is diluted with water.

The appellant testified that the milk sold by him had been analyzed on other occasions and found pure; that he does not know how to ascertain when milk is diluted as the health officers do not advise him what apparatus to use for that purpose; that he sells milk in the same condition in which it reaches him; and that when he learned that the milk seized on December 28 was bad he wanted to have it analyzed by another chemist, but the sample left with him by the inspector who seized the milk had become decomposed.

The defendant made no objection to the information in the trial court, but now alleges that it is insufficient because it does not show that the milk was not sold for industrial purposes, inasmuch as article 9 of the Sanitary Regulations of September 30, 1914, allows milk falling short of the lawful standard to be sold or used exclusively for industrial purposes when the deficiency is due to a natural cause, such as excess of water or absence of cream, and is not produced artificially, in which case the adulteration does not constitute an offense and skimmed milk may be sold when the containers are duly labeled as follows: (*a*) Inferior milk for industrial purposes; (*b*) skimmed milk.

In charging that the appellant sold adulterated milk at his milkstand the information implied that he was selling it to any person and not for industrial purposes; therefore it was sufficient and if this were not the case he should have proved the contrary in his defense, which he did not do.

The appellant also contends that it is not shown that the inspector who placed the preservatives in the milk was a person competent to perform this duty and that perhaps the excess of water in the milk over the standard amount was due to the fact that such person added it. It was not shown that special knowledge is required for adding the preservatives, and in any event the chemist testified that the said

preservatives in no way changed the condition of the milk; wherefore we cannot admit that the use of the preservative added the water which was found in the milk in excess of the lawful standard.

But the fact upon which appellant lays greatest stress is that the difference between the chemical analysis of the milk, which showed only 88.76 per cent of water, and the lawful standard, which is 88 per cent, is so small, being only 0.76 per cent, that when distributed among the four hundred pints of milk sold by the appellant it would amount to seven hundred and sixty cubic centimeters of water to one hundred liters of milk, or three-fourths of a liter of water in one hundred liters of milk, and that two hundred liters of milk, equal to the four hundred pints received by the appellant, would contain only one and a half liters of water—an amount so insignificant that no person desirous of profiting by the sale of adulterated milk would think of adding it.

If we were to go into the true merits of that question, we might reach the conclusion that from 10 to 15 per cent of water was added; but there is no need for this because in any event it is shown that the milk seized contained an excess of water over the *maximum* amount fixed by law, which, whether great or small, is sufficient to establish the fact that the milk did not come up to the standard fixed for determining its purity.

Inasmuch as we have not been influenced by the pamphlet regarding the analysis of milk included in the *fiscal's* brief, we need not consider the appellant's motion to strike out the same.

The judgment appealed from should be

*Affirmed.*

Chief Justice Hernández and Justices Wolf, del Toro and Hutchison concurred.